**FILED**

MAY 3 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 Constitution Avenue, NW
Washington, DC 20001

| | |
|---|---|
| UTHAIWAN WONG-OPASI, Ph.D.<br>Plaintiff, pro se<br>7033 Somerset Farms Drive, Nashville, TN 37221<br>v.<br>JAMES A. HEFNER, Ph.D., ind. & off. cap.<br>708 Postal Ct., Brentwood, TN 37027-7647<br>AUGUSTUS BANKHEAD, Ed.D., ind. & off. cap.<br>177 Lelawood Cir., Nashville, TN 37209-4524<br>JO HELEN, RAILSBACK, Ph.D., ind. & off. cap.<br>408 Bowling Ave. Nashville, TN 37205-2522<br>GLORIA C. JOHNSON, Ph.D. ind. & off. cap.<br>1495 Bell Rd., Nashville, TN 37211-6636<br>MARY D. MBOSOWO, ind. & off. cap.<br>2616 Redvine Rd., Edmond, OK 73034<br>MARCIA G. ELLISON, ind. & off. cap.<br>1101 Downs Blvd., Apt. E107, Franklin, TN 37064<br>JOSEPH H. UDELSON, Ph.D., ind. & off. cap.<br>72B Old Lyme Drive #2, Buffalo, NY 14221-2255<br>Defendants, sued in individual and official capacities | CASE NUMBER  1:05CV01083<br><br>JUDGE: Paul L. Friedman<br><br>DECK TYPE: Pro se General Civil<br><br>DATE STAMP: 05/31/2005<br><br><br>Jury Demand |

JURY ACTION

---

A COMPLAINT FOR DECLARATORY JUDGMENT,
RESTITUTION, AND TREBLE DAMAGES

---

### I.   CAUSE OF ACTION

1.     This lawsuit is brought for a declaratory judgment, restitution, and treble damages caused by defendants' **"Procurement of Breach of Contracts"** pursuant to **Tenn. Code Ann. 47-50-109**.

### II.   JURISDICTION

2.     Jurisdiction of this Court is based upon the diversity of citizenship of the parties in this legal action. **28 U.S.C. 1332**

### III.   VENUE

3.     Venue in this Court is proper given that the defendants' procurement of contract breach occurred in both the states of Tennessee and District of Columbia as a result of two investigations by federal agencies in the Washington, DC area.

1

### IV. PLAINTIFF

4. Plaintiff is a lawful permanent resident of the United States of America.

5. She was employed as a "tenure-track" faculty member by Tennessee State University in Nashville, TN from the Academic Year of 1992 to 1999.

6. Her employment contract with TSU was initially signed by Defendants Hefner and Johnson who were TSU hiring agents and said contract was governed by the Tenure and Promotion Policies of the Tennessee Board of Regents (hereinafter, TBR).

7. The TBR Tenure and Promotion Policies, thus, were "contracts by extension" as they formed an integral and inseparable part of TSU faculty's employment contracts for the contracts' performance, termination, or renewal, etc.

8. All of the named defendants knew the existence of the plaintiff's said employment contract with TSU.

9. However, the named defendants in this legal action conspired to intentionally induce or procure the breach of said contract by blatant, malicious misrepresentation in order to deny her tenure and promotion in the academic years of 1996-97 and 1997-98.

10. As a direct and proximate cause, the plaintiff suffered not only a tremendous loss of employment due to contract non-renewal but also a loss of her good name and employment opportunities with other employers:--academic and non-academic alike.

### V. DEFENDANTS

11. Defendant Hefner is sued herein individually and as TSU President at all relevant times for conspiring with all other named defendants herein to maliciously procure breach of plaintiff's employment contract, resulting in a non-renewal of her employment contract after its ending in May 1999.

12. Defendant Bankhead is sued individually and as TSU Vice President for Academic Affairs who knowingly and intentionally made false misrepresentations on tenure and promotion policies as well as on plaintiff's tenure and promotion profiles during plaintiff's two tenure and promotion applications in 1996-97 and 1997-98.

13. Defendant Bankhead also maliciously failed to act upon plaintiff's appeal of his negative tenure and promotion recommendation in 1997-98.

14. Defendant Railsback is sued individually and in her "claimed" "official" capacity as the "Acting Head" of the Dept. of Languages, Literature, and Philosophy or as Defendant Johnson's agent solely for the purpose of acting maliciously on the plaintiff's tenure and promotion application in 1996-97.

15. Defendant Johnson is sued in her individual and official capacities as the "Head" of the Dept. of Languages, Literature, and Philosophy for her intentional and malicious absence from duty in the tenure and promotion application process in the academic year of 1996-97 and for conspiring with all of the named defendants in the denials of the plaintiff's tenure and promotion applications in 1997-98.

16. Defendant Mbosowo is sued in dual capacities as she intentionally and maliciously conspired with Defendants Ellison, Johnson, and more to misrepresent herself as plaintiff's immediate supervisor in February 1997.

17. Defendant Mbosowo's sole purpose was to unlawfully instigate an investigation on Defendant Ellison's complaint against the plaintiff in order to create a knowingly false and malicious misrepresentation of the plaintiff's character in the plaintiff's employment records at TSU and in the Office of Special Counsel and EEOC records of plaintiff's complaints of employment discrimination against Defendants Hefner, Bankhead, Johnson, Lovett, and TSU.

18. Defendant Ellison is sued individually and in her official capacity as a Spanish instructor under the plaintiff's supervision who knowingly, intentionally, and maliciously brought a false complaint against the plaintiff in February 1997.

19. Defendant Udelson is sued individually and for his official role in writing a false, damaging report or evaluation of the plaintiff's tenure and promotion application in 1997-98, based solely upon false allegations of plaintiff's "lack of collegiality."

## VI.    STATUTE OF LIMITATION

20. **Six** years, and not three years, after the cause of action accrued, is the applicable statute of limitation on an action based on contract, pursuant to contract law and **Tenn. Code Ann. 28-3-109(a)(3)** and for an action against public officers, for nonfeasance, misfeasance, and malfeasance in office pursuant to **Tenn. Code Ann. 28-3-109(a)(2).**

21. Stated differently, this lawsuit, unlike plaintiff's prior lawsuits, is based on contract law under **Tenn. Code Ann. 47-50-109** and not tort law.

22. **Tenn. Code Ann. 47-50-109** provides for restitution of contract as well as a treble damage to restore the victim of false procurement or inducement of breach of contract to her original position had the breach not occurred.

23. Moreover, all of the named defendants were public officers and the complaint hereinunder is evidence of their nonfeasance, misfeasance, and/or malfeasance in office.

24. Hence, it is the cause of action, not the form of the suit, which determines the applicable statute of limitation, e.g. one year, three years, or six years. Callaway v. McMillian, 58 Tenn. 557 (1872).

25. The applicable statute of limitations to a particular cause is determined according to the gravamen of the complaint. Headrick v. Union Carbide Corp., 825 S.W.2d 424 (Tenn. Ct. App. 1991).

26. Accordingly, the applicable statute of limitation to this lawsuit is six years.

## VII. FACTS

27. In the academic year of 1992-93, plaintiff was hired for a seven-year tenure track faculty position.

28. Her initial rank was maliciously represented by the defendants as only "Assistant Professor" rank even though her qualifications and experiences merited a "Professor" rank.

29. Defendant Hefner, through his agents, maliciously omitted giving the plaintiff a copy of the TBR Policies on Tenure and Rank.

30. Defendant Hefner, through his agents, also maliciously procured to breach an oral contract to give the plaintiff three years of credit for prior experience so that she could apply for tenure and promotion or for promotion alone in her second year of employment at TSU.

31. Thereinafter, Defendant Hefner, through his agents, maliciously withheld public information such as who received tenure and/or promotion and public access to tenure/promotion records at TSU.

32. As a direct and proximate result, the plaintiff could not apply for tenure in her second year as promised nor could she apply for early tenure and/or promotion in her fourth year of employment.

33. In the plaintiff's fifth year of employment in the academic year of 1996-97, Defendant Hefner, through Defendant Bankhead, knowingly and maliciously misrepresented the policy of tenure that the appropriate year to apply for tenure was in the sixth year of employment even though the truth was that TBR policy allowed faculty two tries to apply for tenure:--i.e. in the fifth year, if successful the first time around, and in the sixth year, if unsuccessful the first time.

34. The purpose of Defendant Bankhead's misrepresentation was to bar the plaintiff from applying for tenure even though by the time of Defendant Bankhead's announcement through a university-wide memorandum, the plaintiff had already been approved for both tenure and promotion.

35. Defendant Johnson conspired with Defendant Railsback in acting negatively on the plaintiff's tenure and promotion application in 1996-97 based on the false misrepresentation of the sixth-year tenure requirement.

36. Another knowing, intentional, and malicious misrepresentation by Defendant Hefner's agents was that promotion could not be applied for separately from tenure even though TBR policies on tenure and promotion did not contain the simultaneous application requirement.

37. The plaintiff spear-headed a university-wide effort to oppose such bars by presenting records of actual lists of awards of tenure and promotion at TSU, obtained from TBR.

38. As a result, the TSU Chapter of the American Association of University Professor presented a university-wide petition for Defendant Hefner to comply with TBR policies.

39. However, Defendant Hefner knowingly, intentionally, and maliciously misrepresented to the TSU Faculty Senate who met with him on the AAUP Petition that "from now on, faculty in their fifth year of employment can apply for tenure."

40. Said misrepresentation was false because Defendant Hefner did not restore the plaintiff's application which had been unlawfully removed from the tenure and promotion application process.

41. As a direct and proximate result, the plaintiff was not awarded either tenure or promotion in 1996-97.

42. The plaintiff had initiated a complaint of discrimination filing with the EEOC in Nashville and the Office of Special Counsel for Immigration-Related Unlawful Employment Discrimination in Washington, DC since October 1996.

43. As a result, Defendant Hefner conspired with or through Defendants Ellison, Mbosowo, Johnson, and Udelson, to procure contract breach by falsely charging the plaintiff with "lack of collegiality" through Defendant Ellison's complaint against the plaintiff's character as a person and as a libel to her teaching via unproven allegations of students' complaints of plaintiff's teaching.

44. Defendant Mbosowo was never the plaintiff's immediate supervisor, only a colleague in different language programs, yet she conspired with Defendants Hefner, Ellison, and Johnson by falsely misrepresenting herself to be the plaintiff's immediate supervisor who had the authority to act on complaints against the plaintiff.

45. Defendant Udelson knowingly, intentionally, and maliciously wrote a damaging evaluation on the plaintiff's tenure and promotion application in 1997-98 because his report was based upon a record from one side and never bothered to contact the plaintiff for her side of the story.

46. All of these false misrepresentations were made in order to induce breach of contract by denying the plaintiff tenure in her sixth-year of employment which resulted in the termination of her employment contract in 1999.

47.     Defendant Bankhead also knowingly, intentionally, and maliciously made false allegations of the plaintiff's unauthorized use of her title of "Coordinator of Spanish" and of "lack of collegiality" thereby denying the plaintiff tenure and automatically omitted the issue of promotion.

48.     Defendants Bankhead and Hefner knowingly, intentionally, and maliciously failed to act on the plaintiff's appeal against her tenure denial in 1997-1998.

49.     As a direct and proximate result, the plaintiff lost her seven years of employment and her cumulative experience and international acclaim.

50.     Said damages are restitutable via restoration to her original standing plus what she would have been able to do academically from 1999 to the present given her exceptional caliber.

## VIII.  DAMAGES

51.     The damages accrued to date and will not toll until the plaintiff is restored to her employment at TSU.

52.     This is due to the fact that when a faculty member is not awarded tenure, it is a flag in her employment history and rarely would a comparable employment be found after vesting seven years of hard work at TSU.

53.     Worse still, is the fact that when employment discrimination is cried, through filings of EEOC and IRCA complaints as well as employment discrimination lawsuits, no other employers would hire the plaintiff in any job capacities.

54.     Damage is accrued for failures to place the plaintiff at the appropriate rank and/or to promote the plaintiff in rank thereafter, totaling approximately $10,000 - $20,000 a year in salary plus fringe benefits and retirement for seven years during her employment at TSU.

55.     Damage is also sought for approximately five years of unemployment.

## IX.     PRAYER FOR RELIEF

56.     The plaintiff prays that:--

    a.    process be issued and served upon the defendants;

    b.    the Court enter a declaratory judgment against the defendants;

    c.    a jury be impaneled to hear damages;

    d. in the event the Court does not enter a declaratory judgment, a jury be impaneled to hear and decide the case;

    e. the plaintiff be awarded tenure and promotions had contract breach not occurred;

    f. treble damages be awarded to the plaintiff per provisions of Tenn. Code Ann. 47-50-109; and

    g. all malicious misrepresentations by the conspiring defendants be removed from the plaintiff's employment records.

  I declare, under penalty of perjury, that the foregoing is true to the best of my knowledge, information, and belief.

Signed this **31st** day of **May, 2005**

                _____
                Uthaiwan Wong-opasi, PH.D.
                Plaintiff, pro se
                7033 Somerset Farms Drive
                Nashville, TN 37221